UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

MICHAEL J. BUCKNER, JR.                                          Plaintiff

v.                                          Civil Action No. 3:25-cv-596-RGJ

TATA CONSULTANCY SERVICES LTD.                                   Defendants

* * * * *

**MEMORANDUM OPINION & ORDER**

Plaintiff Michael Buckner ("Buckner") brings claims of retaliation, race discrimination, and wrongful termination in violation of public policy against Tata Consultancy Services Limited, ("TCS"). TCS makes a special appearance to contest personal jurisdiction and, in the alternative, moves to dismiss for failure to state a claim. [DE 9]. Buckner responded [DE 10] and TCS replied [DE 13]. In response to TCS's jurisdictional argument, Buckner moved for an extension of time to effect proper service [DE 11] and filed proof of service on December 3, 2025 [DE 12]. These matters are ripe. For the reasons below, Buckner's Motion to Note Completion of Service or, in the Alternative, for a Brief Extension of Time to Effect Proper Service [DE 11] is **GRANTED** and TCS's Motion to Dismiss [DE 9] is **GRANTED in part and DENIED in part.**

## I.      BACKGROUND

This case arises out of an employment dispute which began with an email exchange between Buckner and other employees, third-party contractors, and third-party vendors associated with Buckner's employer, TCS, and non-party Hilton Worldwide Holdings Inc. ("Hilton").[1]

During the relevant time period, Buckner was employed by TCS and assigned to Hilton's "IT Migration Program." [DE 1 at 15]. According to Buckner, in May 2024, Hilton employee

---

[1] The claims in this case are substantially similar to those made in *Buckner v. Hilton Worldwide Holdings, Inc. et al.*, W.D. Ky. Civil Action No. 3:24-cv-375-RGJ (the "*Hilton* Action").

Brian Waller ("Waller") "circulated a defamatory email labeling [Buckner's] communications as 'aggressive' and 'not the Hilton way,'" and that Waller "invoke[ed] racial stereotypes about Black men." [*Id.*]. Buckner objected to Waller's characterization and "pursued internal complaints," after which Buckner claims "Hilton and TCS jointly subjected Plaintiff to heightened scrutiny, sidelined him from key projects, and pressured him with a coercive severance package." [*Id.*]. TCS terminated Buckner on November 20, 2024. [*Id.*].

Buckner filed a charge of discrimination against TCS with the Equal Employment Opportunity Commission ("EEOC") on or about September 9, 2025. The charge alleged that while employed with TCS Buckner "was subject to a pattern or practice of discrimination based upon my race and or sex." [DE 1-1 at 7]. Buckner states in the Complaint that "[o]n or about September 2025, the EEOC issued Plaintiff a Notice of Right to Sue, authorizing this lawsuit."[2] [DE 1 at 15].

Buckner commenced this action on September 15, 2025, alleging three claims against TCS: Retaliation (Count I), Race Discrimination (Count II), and Wrongful Termination in Violation of Public Policy (Count III). [DE 1].

On October 7, 2025, the Court issued an executed summons to Buckner, with the docket notation: "Plaintiff is responsible for serving the attached issued summons(es), mailed to plaintiff by Clerk." [DE 7].

According to TCS, Buckner mailed to TCS the "Notice of Right to Sue Letter issued on September 24, 2025," "four (of six) pages of his Complaint" and "Exhibit A to his Complaint . . . on October 23, 2025." [DE 9 at 46]. However, "[n]o summons was included." [*Id.*].

TCS moved to dismiss for Buckner's failure to effect service of process and for failure to state a claim. After TCS filed the motion to dismiss, Buckner subsequently contracted with a

---

[2] Buckner cites to "Exhibit A" to the Complaint [DE 1-1]. However, the attached exhibit is "Form 5 (06/24)," the EEOC "Charge of Discrimination" form.

process server and filed a Proof of Service. [DE 12]. By declaration, the process server stated that he "served the summons on CT Corporation, who is designated by law to accept service of process on behalf of Tata Consultancy Services Limited," on November 24, 2025. [DE 12-1].

## II.    DISCUSSION

### A.  TCS's Motion to Dismiss [DE 9]

#### 1.  Standard

Under Rule 12(b)(6), to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The complaint need not contain "detailed factual allegations," yet must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555).

*Pro se* pleadings are held to a less stringent standard than formal pleadings drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 519 (1972). Yet "the lenient treatment generally accorded to *pro se* litigants has limits." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). For example, "the less stringent standard for *pro se* plaintiffs does not compel courts to conjure up unpleaded facts to support conclusory allegations." *Leisure v. Hogan*, 21 Fed. App'x 277, 278 (6th Cir. 2001). Additionally, the Court cannot "create a claim which [the plaintiff] has not spelled

out in his pleading." *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). A *pro se* complainant must still contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory. *See Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 (6th Cir. 1988). Ultimately, "[t]he Court's duty to construe a *pro se* complaint liberally does not absolve a plaintiff of the duty to comply with the Federal Rules of Civil Procedure by providing each defendant with fair notice of the basis of the claim." *Jones v. Cabinet for Families & Children*, No. 3:07-cv-11-S, 2007 WL 2462184, at *4 (W.D. Ky, Aug. 29, 2007) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

2. Analysis

As an initial matter, "TCS concedes that the Court now has personal jurisdiction over it and withdraws that portion of its motion."[3] [DE 13 at 92 n.2 (discussing effect of Buckner's Proof of Service)]. Buckner's motion for an extension of time to effect service [DE 11] is **GRANTED.** The sole issue before the Court, then, is whether Buckner's complaint must be dismissed for failure to state a claim.

a. *Count I: Title VII Retaliation*

TCS argues that Buckner's retaliation claim fails because he failed to exhaust his administrative remedies, or, in the alternative, failed to meet his burden of pleading. [DE 9 at 54].

i. Exhaustion

Exhaustion of administrative remedies is a prerequisite to filing a district court lawsuit alleging discrimination under Title VII, and that a plaintiff may only bring a Title VII action in district court after he has exhausted the administrative remedies provided under 42 U.S.C. § 2000e-16. *Holmes v. Sw. Hum. Res. Agency,* No. 1:17-cv-02266-STA, 2017 WL 3741557, at *1 (W.D.

---

[3] The Court appreciates TCS's candor and assistance in narrowing the issues before the Court.

4

Tenn. Aug. 30, 2017) (citing *Brown v. GSA*, 425 U.S. 820, 822-33 (1976)). The exhaustion of administrative remedies serves an important public policy: "The requirement that the plaintiff exhaust administrative remedies prior to instituting suit is intended to ensure that the [administrative agency] will have been afforded an opportunity to attempt conciliation and voluntary settlement, the preferred means for resolving employment discrimination disputes." *Parsons v. Yellow Freight Sys. Inc.*, 741 F.2d 871, 873 (6th Cir. 1984) (citation modified).

To exhaust, the EEOC "charge must be 'sufficiently precise to identify the parties, and to describe generally the action or practices complained of.'" *Golden v. Mirabile Investment Corp.*, 724 F. App'x 441, 445 (6th Cir. 2018) (citation modified). This requirement puts the employers on notice and gives the EEOC the opportunity to investigate or settle the dispute. *Id.* In considering whether a plaintiff adequately included a claim in his EEOC charge, the Court construes the EEOC complaint liberally, and "consider[s] claims that are reasonably related to or grow out of the factual allegations in the EEOC charge." *Id.* (citation omitted).

In his EEOC charge, Buckner's claim stated as follows:

> On or about September 1, 2021 I was hired as Project Manager for Tata Consultancy. On or about November 20, 2024 I was terminated from Tata Consultancy. While working at the Respondent I was subject to a pattern or practice of discrimination based upon my race and or sex. I was forced to utilize software that would not allow me access into accounts and was subjected to having to take unnecessary trainings that compromised my job performance. Additionally I was subjected to an unfair performance review. Ultimately I was terminated for filing a lawsuit against an account in which I worked for previously. I believe that I have been discriminated and retaliated against due to my Race-African American and Sex-Male in violation of Title VII of the Civil Rights Act of 1964, as amended.

[DE 9-1 at 71].

TCS first argues that Buckner's EEOC charge cannot exhaust a retaliation claim because the sole allegation supporting a retaliation claim in the EEOC charge is Buckner's allegation that

he "was terminated for filing a lawsuit against an account in which [he] worked for previously." [DE 9-1 at 71]. The parties do not dispute that the lawsuit referenced in the EEOC charge relates to the *Hilton* Action, in which Buckner brought a defamation claim and attempted to amend his complaint to add claims against TCS for, *inter alia*, retaliation. [DE 9 at 55 n.5; *see also* Mem. Op. & Order, *Hilton* Action (Mar. 21, 2025) (construing retaliation claim as First Amendment retaliation claim, not Title VII retaliation claim)]. Yet, as TCS argues, "[a] defamation lawsuit is not protected by Title VII." [DE 9 at 55]. In contrast, Buckner's complaint states that TCS retaliated against him because he "engaged in protected activity by opposing workplace discrimination *and* pursuing claims against Hilton." [DE 1 at 16 (emphasis added)]. Thus, TCS asserts that "Buckner's allegation of Title VII retaliation is *in addition to* his allegation that he was also retaliated against for 'pursuing claims related to defamation and retaliation tied to his employment with Hilton Worldwide Holdings Inc.'" [DE 9 at 55].

Here, although TCS complains that the *Hilton* Action alleged defamation and not discrimination, the factual predicates underlying the previous action substantially overlap with the factual allegations in this case. There is no doubt, and TCS does not meaningfully dispute, that Buckner's EEOC charge claimed retaliation based on the *Hilton* Action. The charge identifies TCS as the relevant party, describes a pattern of discrimination based on his race, and complains that he was retaliated against for filing the lawsuit against Hilton. Whether Buckner engaged in protected activity by filing the *Hilton* Action goes to whether Buckner states a claim for retaliation but does not impact the Court's analysis with respect to the exhaustion requirement.[4]

---

[4] For the reasons below, the Court need not determine whether the *Hilton* Action establishes protected activity because Buckner sufficiently alleges that he engaged in other protected activity, i.e., internal complaints regarding the email.

Whether Buckner may bring a claim for retaliation based on his opposition to the alleged discrimination is less straightforward. TCS is correct that Buckner did not expressly allege in the EEOC charge that he "opposed workplace discrimination" or that he was retaliated against for this activity. [DE 9 at 56]. But the charge did provide sufficient notice that Buckner claimed unlawful retaliation and that it was related to Buckner's allegations that TCS subjected him "to a pattern or practice of discrimination based upon [his] race."  [DE 9-1 at 71]. The Court is satisfied that the claim is "reasonably related to or grow[s] out of the factual allegations in the EEOC charge." *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 362 (6th Cir. 2010). Indeed, the allegations of discrimination are sufficiently related such that the EEOC may have been prompted to investigate a retaliation claim based on actions Buckner took in response to the alleged discrimination. *See Davis v. Sodexho*, 157 F.3d 460, 463 (6th Cir. 1998) ("[W]here the facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim."). As a result, the Court finds that Buckner's EEOC charge satisfies the exhaustion requirement.

ii.    Failure to State a Claim

Next, TCS argues that Buckner "fails allege a plausible claim of Title VII retaliation." [DE 9 at 56]. Title VII's anti-retaliation provision prohibits an employer from discriminating against an employee "because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e–3(a). An employee engages in protected activity when the employee opposes practices that the employee reasonably believes are in violation of the statute. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 579 (6th Cir. 2000). The anti-retaliation provision protects an employee from materially adverse employment actions that are based on retaliation for engaging in the protected conduct. *Rogers v.*

*Henry Ford Health Sys.*, 897 F.3d 763, 775-76 (6th Cir. 2018). At this stage, Buckner need not present "detailed factual allegations," but must only "allege sufficient 'factual content' from which a court, informed by its 'judicial experience and common sense,' could 'draw the reasonable inference'" that he was retaliated against. *See Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012). [5]

TCS contends that Buckner "fails to include any facts about his purported complaints or their substance to plausibly allege that they, in fact, occurred or were related to his race and therefore protected by Title VII." [DE 9 at 57].

It is true that Buckner's complaint could be more developed. Nevertheless, Buckner has adequately pleaded that he engaged in protected activity under Title VII. Buckner alleges that his complaints were "about defamation, retaliation, and workplace discrimination." [DE 1 at 16]. Specifically, the complaint states that he "pursued internal complaints" about what he perceived as an email "invoking racial stereotypes about Black men." [*Id.* at 15]. Title VII requires only that a plaintiff complain about employment acts that the plaintiff reasonably believes are unlawful. The reported act need not actually be an unlawful act to trigger Title VII's anti-retaliation protection. *See Yazdian v. ConMed Endoscopic Technologies, Inc.*, 793 F.3d 634, 645 (6th Cir. 2015) ("To come within the protection of Title VII, [Plaintiffs] must establish that [they] challenged an employment practice that [they] reasonably believed was unlawful.").

Albeit sparse, Buckner's complaint is distinguishable from other pro se complaints which have failed to satisfy "the modest standard of plausibility." *Reddy v. Mediscribes, Inc.*, No. 3:20-

---

[5] In *Swierkiewicz*, the Supreme Court considered and rejected the argument that "a complaint in an employment discrimination lawsuit must contain specific facts establishing a prima facie case of discrimination under the framework . . . in *McDonnell Douglas* [ ]." 534 U.S. at 508 (2002); *see also Carson v. Little Clinic Mgmt. Servs. LLC*, No. 3:19-CV-682-DJH, 2020 WL 2748501, at *2 (W.D. Ky. Feb. 12, 2020).

CV-128-RGJ, 2021 WL 2941987, at *7 (W.D. Ky. July 13, 2021) (noting it was "questionable whether [the plaintiff's] allegations establish protected activity" where the plaintiff "d[id] not indicate how she conveyed this complaint to Mehta or the substance of the complaint"). *See also Carson v. Little Clinic Mgmt. Servs. LLC*, No. 3:19-CV-682-DJH, 2020 WL 2748501, at *3 (W.D. Ky. Feb. 12, 2020) ("[A]lthough Plaintiff's pro se complaint is not a model of pleading, the Court concludes that he has pleaded sufficient facts to give Defendant 'fair notice of the basis for [his] claims,. . .  which is all he must do at this stage in the proceedings.") (citation modified). Consequently, the Court need not determine at this time whether Buckner filing the *Hilton* Action also constituted protected activity. In the event TCS feels the complaint fails to provide sufficient notice regarding the substance of Buckner's complaints, TCS may "move for a more definite statement under Rule 12(e) before responding." *Swierkiewicz*, 534 U.S. 506 at 514 (2002).

Similarly, the Court finds that Buckner has plausibly alleged that he suffered adverse employment actions as a direct result of his protected activity. After complaining about the email, Buckner states he was "subjected . . . to heightened scrutiny, sidelined . . . from key projects, and pressured . . . with a coercive severance package." [DE 1 at 15]. Although a coercive severance package may not constitute an adverse employment decision, being removed from consideration for important opportunities and put under additional review may give rise to a claim for retaliation. *See, e.g., Spikes v. Humana Inc.*, No. 3:24-CV-434-RGJ, 2024 WL 4957575, at *3 (W.D. Ky. Dec. 3, 2024) (finding pro se plaintiff stated a plausible claim for retaliation where "the complaint allege[d] that Plaintiff filed a sexual harassment claim . . . and that instead of remedying the situation, Defendant deprived Plaintiff of a promotion and placed on her on an employment improvement plan"). And Buckner's termination certainly qualifies as an adverse employment action. *See Spees v. James Marine, Inc.*, 617 F.3d 380, 391 (6th Cir. 2010) (defining a materially

9

adverse employment action as "a materially adverse change in the terms and conditions of [a plaintiff's] employment[, such as] a significant change in employment status, including hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.").

As for the "causal relationship between his conclusory allegations of protected activity and any alleged adverse employment action," [DE 9 at 57], Buckner alleges in the complaint that "TCS terminated [his] employment despite his exemplary performance and lack of prior discipline" and that the decision to terminate him was "directly connected to . . . his complaints about defamation, retaliation, and workplace discrimination." [DE 1 at 15]. Although the temporal proximity between Buckner's complaints and the alleged adverse actions alone are insufficient to infer a causal link, the additional allegations that Buckner was passed over despite his record of performance "draws a line between the two." *Richards v. Speer*, No. 5:15-CV-197-TBR, 2017 WL 6347969, at \*6 (W.D. Ky. Dec. 12, 2017) (finding causal connection adequately pleaded where, along with temporal proximity to protected activity, plaintiff alleged "that he was objectively more qualified for each position and was still not given the promotions as a result of his having filed an EEOC complaint"). Buckner therefore states a plausible claim for retaliation under Title VII.

To the extent TCS requests the Court to take judicial notice of the *Hilton* Action to refute the allegations in the complaint, the Court declines to do so. When faced with a motion under Rule 12(b)(6), courts "may take judicial notice of other court proceedings without converting the motion into one for summary judgment." *Buck v. Thomas M. Cooley L. Sch.*, 597 F.3d 812, 816 (6th Cir. 2010). However, this is ordinarily only done "for res judicata purposes," or when judicial notice is taken "not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." *Winget v. JP Morgan Chase Bank, N.A.*,

10

537 F.3d 565, 576 (6th Cir. 2008) (quoting *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999)). *Cf. Buck*, 597 F.3d at 816 (res judicata). Neither circumstance applies here.

That is not to say that the *Hilton* Action is irrelevant to Buckner's claims. Issue preclusion as to otherwise disputed facts on summary judgment may be appropriate, "where all the requirements of collateral estoppel are met." *Spilman v. Harley*, 656 F.2d 224, 228 (6th Cir. 1981). Indeed, Buckner's complaint in this case appears to cast Waller's email in a different light than the *Hilton* Action—there, Buckner challenged the email as defamatory rather than discriminatory. But Buckner's theory that the email's use of the word "aggressive" was a "racial dog whistle" was never fully litigated. [DE 10 at 77. *See* DE 9 at 49 n.4 ("Buckner alleged for the first time [on appeal] that the word 'aggressive' in Mr. Waller's email was particularly harmful defamation based on the social and racial context of [] Buckner's status as a 'Black Professional.'")]. Taking judicial notice of the *Hilton* Action to estop Buckner from relitigating the contents and meaning of the email would be inappropriate. "Whether or not [Buckner] can ultimately prove this claim is not at issue at this point. [H]e has alleged enough for the claim to proceed to the next phase of the litigation." *Taliaferro v. Centennial Surgical Clinic, LLC*, No. 3:24-CV-00454, 2025 WL 2425752, at *4 (M.D. Tenn. Aug. 20, 2025), *report and recommendation adopted*, No. 3:24-CV-00454, 2025 WL 2602360 (M.D. Tenn. Sept. 9, 2025).

TCS's motion to dismiss [DE 9] is **DENIED** as to Count I.

b.   *Count II: Race Discrimination*

Count II of the complaint alleges "Race Discrimination" pursuant to 42 U.S.C. § 1981. Section 1981 "prohibits intentional race discrimination in the making and enforcing of contracts." *Amini v. Oberlin Coll.*, 440 F.3d 350, 358 (6th Cir. 2006).

11

> In order to establish a claim for racial discrimination under section 1981, a plaintiff must plead and prove that (1) he belongs to an identifiable class of persons who are subject to discrimination based on their race; (2) the defendant intended to discriminate against him on the basis of race; and (3) the defendant's discriminatory conduct abridged a right enumerated in section 1981(a).

*Id.* "[Buckner] meets the first element because he is African-American." *Guy v. Spader Freight Servs.*, No. 14-3768, 2015 U.S. App. LEXIS 23480, at *5-6 (6th Cir. Apr. 30, 2015). But TCS is correct that Buckner has not "allege[d] the existence of any contract that was allegedly impaired because of his race." [DE at 58]. Buckner therefore "fails to meet the basic pleading requirements of a claim under § 1981(a)" and his claim must be dismissed. 2015 U.S. App. LEXIS 23480, at *5-6.

That said, pro se complaints must be liberally construed. Although styled as a § 1981 claim, the Court finds the allegations are more appropriately construed as a disparate-treatment claim under Title VII. [*See* DE 1 at 16 ("Plaintiff is a Black male and was subjected to disparate treatment compared to similarly situated non-Black employees.")].

> To establish a prima facie disparate-treatment claim, a plaintiff must allege, among other things, that he was treated differently from similarly situated individuals outside of the protected class. A plaintiff does not need to establish a prima facie case at the pleading stage, but need only allege sufficient facts to state a plausible discrimination claim.

*Guy*, 2015 U.S. App. LEXIS 23480, *7-8. Accordingly, the Court will construe Count II as disparate-treatment claim.

Even when viewed in a light most favorable to Buckner, however, the Court is still unable to plausibly infer a cause of action against TCS. Buckner's claim that he was treated differently than "similarly situated non-Black employees" is wholly conclusory and must be disregarded. [DE 1 at 16]. Nowhere else in the complaint does Buckner provide factual allegations regarding the

12

protected status (or lack thereof) of other TCS employees or explain how his treatment differed from theirs. TCS's motion to dismiss [DE 9] is **GRANTED** as to Count II.

   c.   *Count III: Wrongful Termination in Violation of Public Policy*

Kentucky law permits employers to discharge employees "for good cause, for no cause, or for a cause that some might view as morally indefensible." *Firestone Textile Co. Div., Firestone Tire & Rubber Co. v. Meadows*, 666 S.W.2d 730, 731 (Ky. 1983); *Wymer v. JH Properties, Inc.*, 50 S.W.3d 195, 198 (Ky. 2001). "A narrow public-policy exception to Kentucky's terminable-at-will doctrine, however, covers an employee's discharge contrary to a fundamental and well-defined public policy as evidenced by existing constitutional or statutory law." *Sheard v. Novo Nordisk, Inc.*, 595 F. Supp. 3d 604, 613 (W.D. Ky. 2022) (quoting *Grzyb v. Evans*, 700 S.W.2d 399, 401 (Ky. 1985)) (internal quotations omitted). A plaintiff can establish this exception under Kentucky law if: (1) the discharge is contrary to a fundamental and well-defined public policy as evidenced by existing law; (2) the policy must be evidenced by a constitutional or statutory provision; (3) the decision of whether the public policy asserted meets these criteria is a question of law for the court to decide, not a question of fact. *Grzyb*, 700 S.W.2d at 401; *see also Greissman v. Rawlings & Assocs., PLLC*, 571 S.W.3d 561, 566 (Ky. 2019) ("To establish a cause of action for wrongful discharge, an employee must show that the termination was contrary to public policy evinced by a constitutional or statutory provision, or that the discharge directly resulted from the employee's refusal to violate the law during the course of his employment."). While "the legislature need not expressly create a private remedy before the courts can recognize public policy as established by legislative determination," "the concept of an employment-related nexus is critical to the creation of a clearly defined and suitably controlled cause of action for wrongful discharge." *Grzyb*, 700 S.W.2d at 402 (citing *Firestone*, 666 S.W.2d at 733).

Buckner alleges that his "[TCS] discharged [him] in retaliation for engaging in protected activity." [DE 1 at 16]. Because Buckner is pleading a wrongful termination action under the protected-activity exception, he must show that his termination was "contrary to public policy evinced by a constitutional or statutory provision." *Greissman*, 571 S.W.3d at 566. However, Buckner does not identify which statutory or constitutional provision provides that filing a lawsuit is a fundamental and well-defined public policy, which he is required to do to sufficiently plead this claim. *See Charles Print Fulfillment Servs., LLC*, No. 3:11-CV-00553-TBR, 2015 WL 5786817, at *9 (W.D. Ky. Sept. 30, 2015) ("To plead a wrongful termination claim under the protected-activity exception, [Plaintiff] must first identify a public policy clearly articulated in the Kentucky Revised Statutes.").

In his opposition brief, Buckner explains that "Kentucky public policy and federal anti-retaliation protections" [DE 1 at 16] refers to the "Kentucky Civil Rights Act (KCRA)," which "explicitly confers the right to be free from racial discrimination and retaliation for opposing it." [DE 10 at 78]. TCS is correct that "a wrongful termination claim premised on the KCRA is preempted and cannot proceed." [DE 13 at 99 (citing *Watts v. Lyon Cnty. Ambulance Serv.*, 23 F. Supp. 3d 792, 813 (W.D. Ky. 2014) ("To the extent the basis for this claim is the same as that for his Title VII and KCRA claims, it is preempted and subsumed by those more specific laws.").].
Accordingly, even if Buckner had raised this argument in his complaint and not in the opposition, Count III would nevertheless fail. TCS's motion to dismiss [DE 9] is **GRANTED** as to Count III.

### III.    CONCLUSION

Accordingly, the Court, having considered the parties' motions and related filings and being otherwise sufficiently advised, **IT IS ORDERED**:

(1) Buckner's Motion to Note Completion of Service or, in the Alternative, for a Brief Extension of Time to Effect Proper Service [DE 11] is **GRANTED.**

(2) TCS's Motion to Dismiss [DE 9] is **GRANTED in part and DENIED in part.**

(3) Counts II and III are **DISMISSED.**

Rebecca Grady Jennings, District Judge
United States District Court

July 14, 2026

cc:    Plaintiff, pro se